**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

***

| | |
|---|---|
| LPL FINANCIAL, LLC, | Case No. 2:19-cv-00120-GMN-VCF |
| Plaintiff, | **Report and Recommendation** |
| vs. | MOTION FOR DEFAULT JUDGMENT (ECF NO. 8) |
| CHRISTOPHER J. LOSSING, *et al.*, | |
| Defendants. | |

Before the Court is plaintiff LPL Financial, LLC's ("LPL") motion for default judgment. (ECF No. 8). The plaintiff's motion should be granted in part: the Court should grant plaintiff's motion for default judgment regarding claims 1-7 and but deny it as to claim 8.

**I.    Background**

Plaintiff alleges that defendant Christopher Lossing, a former LPL employee, converted $291,565.00 in funds that the Eighth Judicial District Court of Clark County, Nevada awarded to Lossing's ex-wife, Gabriela Canales, pursuant to their divorce. (ECF No. 1). In a settlement, LPL paid Canales the full amount of the converted accounts ($291,565.00) and her attorneys' fees; in exchange Canales assigned to LPL her rights, title, and interest arising from Lossing's unauthorized conversion of the funds. (*Id.* at 4). In the complaint the plaintiff seeks general and special damages in excess of $309,565.00; punitive damages; pre-judgment interest; a pre-judgment writ of attachment on all of defendant's accounts up to $350,000 or in such other amount the Court deems just and equitable under the circumstances; for reasonable attorneys' fees and costs, including expert costs and expenses, pursuant to applicable law; and for such other relief as this Court deems just and necessary. (*Id.* at 9).

On April 3, 2019, plaintiff filed a motion for entry of Clerk's Default (ECF No. 6), and the Clerk's Default was entered November 6, 2017. (ECF No. 7). Plaintiff now moves for default judgement. (ECF No. 8). Plaintiff also filed a redacted copy of one of its affidavits in support of the motion for default on the public docket and a certificate of service of the motion. (ECF Nos. 12 and 13). Plaintiff filed a supporting affidavit seeking $316.262.50 from Lossing to account for the $291,565.00 converted funds, $18,000 plaintiff paid for Canales's attorneys' fees and costs, and $6,697.50 in attorneys' fees and costs LPL paid in defense of Canales's claims. (ECF No. 12).

## II.   Discussion

### a.   Legal Standard

Federal Rule of Civil Procedure 55(a) states, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a).  After the Clerk of Court enters a default, the plaintiff must petition the court to obtain a default judgment. Fed. R. Civ. P. 55(b)(2). After the Clerk of Court enters a default, the plaintiff must petition the court to obtain a default judgment. Fed. R. Civ. P. 55(b)(2).

Before considering whether default judgment should be entered, the court has an affirmative duty to ensure that it has personal jurisdiction over the defaulted defendant and subject-matter jurisdiction over the plaintiff's action. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  A judgment without jurisdiction is void. *Id.* If jurisdiction exists, the court's decision to enter default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Televideo Video Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 ("Rule 55 gives the court considerable leeway as to what it may require as a prerequisite to the entry of a default judgment.")  Federal Rule of Civil Procedure 54(c) limits the court's discretion in one respect: it states that "[a] default judgment must not differ in kind from, or

exceed in amount, what is demanded in the pleadings."

The Ninth Circuit has adopted seven factors courts may consider when exercising its discretion as to adjudicating a motion for default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Under Rule 55, the court must engage in three inquiries when recommending default judgment: (1) whether the court has jurisdiction and can enter default judgment; (2) whether the court should enter default judgment (i.e., whether the *Eitel* factors favor Plaintiff); and (3) whether plaintiff has proven damages. Fed. R. Civ. P. 55.

### b. Whether Jurisdiction Exists

The Court's analysis of plaintiff's motion begins with jurisdiction. *In re Tuli*, 172 F.3d at 712. Jurisdictional allegations must be plausible. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). On a motion for default judgment, the court accepts the allegations as true. *Televideo Video Sys., Inc.*, 826 F.2d at 917–18. The plaintiff alleges in the complaint that this action exceeds $75,000; that LPL is a is an active for profit, foreign limited liability company formed pursuant to the laws of the State of Delaware and with its principal place of business in the State of Massachusetts; and that defendant is a resident of the State of Nevada. (*Id.* at 1-2). Jurisdiction is proper under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and there is diversity of citizenship amongst the parties; venue is proper under 28 U.S.C. § 1391(b)(1). The Court finds it has subject-matter jurisdiction over plaintiff's claims and personal jurisdiction over the defendant.

//

### c. Whether the Eitel Factors Favor Default Judgment

Because the Court's jurisdictional requirements are satisfied, the Court proceeds to the second question: whether the Court should enter default judgment under *Eitel*.

### i. Prejudice to the Plaintiff

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if a default judgment is not entered. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). The plaintiff properly served the defendant with the complaint. The defendant did not answer or defend against plaintiff's claims and default was entered. The defendant's failure to answer or defend against plaintiff's claims is prejudicial to plaintiff because its claims cannot otherwise be resolved on the merits absent the defendant's participation. Plaintiff will effectively be denied relief if not granted a default judgment. See *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery."). The first factor favors entering default judgment.

### ii. The Merits of the Substantive Claims and the Sufficiency of the Complaint

To warrant default judgment, the complaint's allegations must be sufficient to state a claim upon which relief can be granted. *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Plaintiff's complaint satisfies this standard because its claims "cross the line from conceivable to plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Plaintiff asserts the following claims, all of which are meritorious and justify the entry of default judgment against the defendant: (1) conversion, (2) breach of fiduciary duty, (3) breach of contract, (4) breach of implied covenant of good faith and fair dealing, (5) fraudulent or intentional misrepresentation, (6) unjust enrichment, (7) indemnity/contribution, and (8) pre-judgment writ of attachment/garnishment. (ECF No. 1).

### 1. Conversion

Under Nevada law, conversion occurs "when a tortfeasor takes possession, sells the property, and pockets the proceeds of the sale," or makes an unjustified claim of title to property that causes actual interference with the owner's rights of possession therein. See *Scaffidi v. United Nissan*, 425 F. Supp. 2d 1159, 1168 (D. Nev. 2005). LPL has sufficiently alleged conversion against the defendant. Because the Court accepts these allegations as true, *Televideo Video Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-918, plaintiff has plausibly alleged that defendant converted Canales's funds.

### 2. Breach of Fiduciary Duty

Under Nevada law, a claim for breach of fiduciary duty has three elements: (1) existence of a fiduciary duty; (2) breach of the duty; and (3) the breach proximately caused the damages. *Brown v. Kinross Gold U.S.A., Inc*., 531 F. Supp. 2d 1234, 1245 (D. Nev. 2008). A fiduciary relationship exists when one has the right to expect trust and confidence in the integrity and fidelity of another. *Powers v. United Servs. Auto, Ass'n*, 114 Nev. 690, 979 P.2d 1286 (1999). LPL has sufficiently alleged breach of fiduciary duty against the defendant because it alleges that defendant had a fiduciary duty to his clients, and he breached that duty when he distributed Canales's funds to himself. Accepting these allegations as true, plaintiff has plausibly alleged that defendant breached his fiduciary duty.

### 3. Breach of Contract

To state a claim for breach of contract in Nevada, a plaintiff must demonstrate: (1) the existence of a valid contract; (2) that plaintiff performed or was excused from performance; (3) that the defendant breached the contract; and (4) that the plaintiff sustained damages. *Calloway v. City of Reno*, 116 Nev. 250, 993 P.2d 1259, 1263 (2000). LPL has sufficiently alleged breach of contract against the defendant because it alleges that defendant entered into a contract with LPL to provide financial services to its clients and that the defendant breached that contract when he distributed Canales's funds to himself.

Accepting these allegations as true, plaintiff has plausibly alleged that defendant breached his contract with LPL.

### 4. Breach of the Implied Covenant of Good Faith and Fair Dealing

"Every contract imposes upon the contracting parties the duty of good faith and fair dealing." *Hilton Hotels Corp. v. Butch Lewis Prods.*, 109 Nev. 1043, 1044, 862 P.2d 1207, 1208 (1993); citing to *A.C. Shaw Constr. v. Washoe Cty.*, 105 Nev. 913, 913, 784 P.2d 9, 9 (1989)("[A]n implied covenant of good faith and fair dealing exists in all contracts."). The tort action for breach of the implied covenant of good faith and fair dealing requires a special element of reliance or a fiduciary duty. *Great American Ins. Co. v. General Builders, Inc.*, 934 P.2d 257, 263, 113 Nev. 346, 354 (1997). LPL has sufficiently alleged that the defendant had a fiduciary duty to LPL and that the defendant breached the implied covenant of good faith and fair dealing when he intentionally, maliciously, and illegally distributed Canales's funds to himself. Accepting these allegations as true, plaintiff has plausibly alleged that defendant breached the covenant of good faith and fair dealing.

### 5. Fraudulent or Intentional Misrepresentation

Under Nevada law, the elements of fraud are: (1) a false representation made by the defendant; (2) defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation); (3) defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; (4) plaintiff's justifiable reliance upon the misrepresentation; and (5) damage to the plaintiff resulting from such reliance. *Bulbman, Inc. v. Nevada Bell*, 108 Nev. 105, 825 P.2d 588, 592 (Nev. 1992) (citing *Lubbe v. Barba*, 91 Nev. 596, 540 P.2d 115, 117 (Nev. 1975)). LPL has sufficiently alleged that the defendant made a false representation to LPL regarding (1) his authority to remove funds from Canales's accounts; (2) that defendant knew these statements were false or lacked a sufficient basis; (3) that defendant offered false statements to the plaintiff regarding Canales's

accounts intended to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; (4) that plaintiff relied upon the defendant's misrepresentations; and (5) damage to the plaintiff resulting from such reliance in the amount of $291,565.00. Accepting these allegations as true, plaintiff has plausibly alleged that defendant made fraudulent or intentional misrepresentations.

### 6. Unjust Enrichment

Under Nevada law, unjust enrichment, "occurs whenever a person has and retains a benefit which in equity and good conscience belongs to another." *In re Amerco Derivative Litig.*, 252 P.3d 681, 703 (Nev. 2011) (quotation omitted). LPL has sufficiently alleged that the defendant wrongfully took funds from Canales's account and retained the benefit for himself. Accepting these allegations as true, plaintiff has plausibly alleged that defendant has been unjustly enriched.

### 7. Indemnity and Contribution

To establish a claim for indemnity, a claimant must prove: "(1) it has discharged a legal obligation owed to a third party; (2) the party from whom it seeks liability also was liable to the third party; and (3) as between the claimant and the party from whom it seeks indemnity, the obligation ought to be discharged by the latter." *Rodriguez v. Primadonna Co.*, LLC, 125 Nev. 578, 216 P.3d 793, 801 (Nev. 2009). "[T]he remedy of contribution allows one tortfeasor to extinguish joint liabilities through payment to the injured party, and then seek partial reimbursement from a joint tortfeasor for sums paid in excess of the settling or discharging tortfeasor's equitable share of the common liability." *Doctors Co. v. Vincent*, 120 Nev. 644, 651, 98 P.3d 681, 686 (Nev. 2004). LPL has sufficiently alleged that the defendant owed a fiduciary duty to Canales, a third party, which included the duty to act in her best interest and that he was liable to Canales. The plaintiff pleads that as a result of defendant's breach of this duty and intentional, malicious violation of the divorce decree and various other orders, LPL was forced to pay Canales the funds the defendants distributed from the account to himself, plus a portion of

7

her attorney's fees, and its own attorney's fees and costs incurred in defending against Canales' demands. LPL has sufficiently alleged it is entitled to indemnification and contribution from the defendant. Accepting these allegations as true, plaintiff has plausibly alleged that it is entitled to indemnity and contribution from the defendant.

### 8. Pre-Judgment Writ of Attachment / Garnishment

Pursuant to Rule 69 of the Federal Rules of Civil Procedure, post-judgment enforcement proceedings must comply with the procedure of the state where the court is located. *Credit Suisse v. U.S.D.C. for Cent. Dist. of Cal.*, 130 F.3d 1342, 1344 (9th Cir. 1997). Rule 69(a)(1) provides that the "procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." The Ninth Circuit applies state law to proceedings involving garnishment, mandamus, arrest, contempt of a party, and appointment of receivers when such actions are undertaken in aid of executing on a judgment. *Office Depot Inc. v. Zuccarini*, 596 F.3d 696, 699 (9th Cir. 2010). The Nevada statutes governing writs of attachment, NRS §§ 31.010-31.235, apply. The plaintiff asked for a pre-judgment writ of attachment/garnishment in the complaint as its claim 8, but it did not apply for a pre-judgment writ of attachment or garnishment pursuant to Nevada law because a pre-judgment writ of attachment is not a proper claim. There will be no prejudice to plaintiff here because once the plaintiff has its default judgment, pursuant to NRS § 31.010, a judgment creditor may "apply to the court for an order directing the clerk to issue a writ of attachment and thereby cause the property of the defendant to be attached as security for the satisfaction of any judgment." NRS § 31.010(1). The Court recommends that plaintiff's claim for a default pre-judgment writ of attachment/garnishment should be denied.

The Court finds that the second and third factors favor entering default judgment in this case

8

regarding claims 1-7. The Court recommends denying default judgment regarding plaintiff's claim 8 for a pre-judgment writ of attachment/garnishment.

### iii. The Sum of the Money at Stake

The fourth factor considers "the amount of money at stake in relation to the seriousness of [the] Defendants' conduct." *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). In the complaint, plaintiff prays for more than $309,565.00 in damages and reasonable attorneys' fees and costs. (ECF No. 1 at 9). In the instant motion the plaintiff asks for a default judgment against Lossing for $316,262.50 (the sum of the principle amount of $291,565.00, attorneys' fees and costs of $24,697.50, and statutory interest accruing from the date of Judgment. (ECF No. 8 at 4). The plaintiff has pled that defendant's alleged conduct, converting funds that did not belong to him, is serious and warrants the full amount of monetary damages plaintiff seeks. The Court finds that the first three factors favor granting default judgment in this case.

### iv. The Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case. The complaint states plausible claims under *Iqbal*. The complaint is supported by the affidavit of Joseph Starr, the Assistant Vice President and Counsel for LPL based on his personal knowledge of the underlying facts in the complaint. (ECF No. 1-1 at 2). Upon entry of default, plaintiff's factual allegations are taken as true. Given the sufficiency of plaintiff's claims and the fact that plaintiff's allegations must be accepted as true, there is no dispute of material fact that would preclude entry of default judgment. See, e.g., *Wecosign, Inc., v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012) ("Where a plaintiff has filed a well-pleaded complaint, the possibility of dispute concerning material facts is remote."). There is little possibility of a dispute concerning material facts. The fifth *Eitel* factor favors entry of default judgment.

### v. Excusable Neglect

The sixth *Eitel* factor favors default judgment where the defendant has been properly served or the plaintiff demonstrates that the defendant is aware of the lawsuit. *Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 919 (C.D. Cal. 2010). A defendant's conduct is culpable, rather than excusable, if the defendant received actual or constructive notice of the filing of the action and failed to answer. *Meadows v. Dominican Republic*, 817 F.2d 517, 521 (9th Cir. 1987). Plaintiff properly served defendant Lossing with the summons and the complaint. The sixth *Eitel* factor also favors entry of default judgment.

### vi. The Strong Policy Favoring Decisions on the Merits

The seventh *Eitel* factor considers the public policy that "[c]ases should be decided upon their merits whenever reasonably possible." 782 F.2d at 1472. While this public policy favors a decision on the merits, a default judgment is appropriate where a defendant deliberately neglects to wage a defense. See *PepsiCo, Inc. v. California Sec. Cans,* 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("Defendant's failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible"). FRCP 55 was designed to address this problem. *Landstar*, 725 F. Supp. 2d at 922. Where it is impossible to adjudicate an action on the merits because a defendant refuses to participate in litigation, the strong policy favoring decisions on the merits is outweighed by the need to finalize controversies in a timely and orderly fashion, as well as by the public policy favoring judicial economy. See *O'Brien v. United States*, No. 2:07-cv-00986-GMN-GWF, 2010 U.S. Dist. LEXIS 101941, at 6, 106 A.F.T.R.2d (RIA) 2010-6243 (D. Nev. Sep. 9, 2010) (stating that the Court was "compelled" to enter default judgment "in the interest of judicial efficiency").

The plaintiff properly served the defendant with a summons and complaint and the defendant has knowingly refused to participate in this litigation so the policies favoring finality and judicial economy

outweigh the policy favoring a decision on the merits. The seventh *Eitel* factor favors entry of default judgment. Because each of the *Eitel* factors favor entry of a default judgment, the Court recommends granting plaintiff's motion and entering default judgment against the defaulted defendant and in favor of plaintiff LPL.

ACCORDINGLY,

IT IS RECOMMENDED that plaintiff LPL Financial, LLC's motion for default judgment (ECF No. 8) should be GRANTED IN PART: plaintiff's motion for default should be GRANTED as to claims 1-7. The Court recommends DENYING plaintiff's motion for default judgment regarding plaintiff's claim 8 for a pre-judgment writ of attachment/garnishment.

IT IS FURTHER RECOMMENDED that plaintiff be awarded DAMAGES as follows: defendant Christopher Lossing must pay $291,565.00 to plaintiff for the principle amount, $24,697.50 to plaintiff for its attorneys' fees and costs, and statutory interest to the plaintiff accruing from the date of Judgment.

IT IS FURTHER RECOMMENDED that FINAL JUDGMENT be entered against the defaulted defendant Christopher Lossing.

DATED this 2nd day of June 2020.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE